**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SUNGMIN BAE,<br>Petitioner,<br>v.<br>TODD BLANCHE, et al.,<br>Respondent. | Case No. 5:26-cv-02213-SPG-SSC<br>**ORDER ACCEPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE [ECF NO. 19]** |

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition for Writ of Habeas Corpus by a Person in Federal Custody, the records on file, and the Supplemental Report and Recommendation of the United States Magistrate Judge. (Supp R. & R., ECF No. 19.) Further, the Court has engaged in a *de novo* review of those portions of the Supplemental Report to which objections may have been made.

As the Supplemental Report explains, this is Petitioner's second habeas petition. (Supp R. & R. at 1.) This Court previously granted a separate habeas petition filed by the Petitioner, and it ordered that Petitioner receive an individualized bond hearing before an immigration judge. (*Id.*) The assigned Immigration Judge subsequently denied bond, reasoning that the Government had shown by clear and convincing evidence that Petitioner was a flight risk such that no amount of bond or alternatives to detention would be sufficient to mitigate that risk. (*Id.* at 2.) Petitioner

then filed a second habeas petition, claiming that the Immigration Judge misapplied the applicable framework, did not issue a reasoned decision, did not consider alternatives to detention, and was not a neutral adjudicator. (*Id.*) On May 12, 2026, Magistrate Judge Christensen issued a Report recommending that the Petition be dismissed without prejudice for lack of administrative exhaustion. (*Id.*; *see also* May R. & R. at 6, ECF No. 10.) The Court declined to adopt the Report, reasoning that waiver of the exhaustion requirement was appropriate, and it referred the Petition back to Magistrate Judge Christensen for evaluation on the merits. (Order Declining R. & R. at 7–8, ECF No. 15.)

On August 11, 2026, Magistrate Judge Christensen issued a second Report, recommending that the Court deny the Petition. (Aug. R. & R. at 14, ECF No. 16.) On August 24, 2026, Petitioner objected, arguing it was the Government's burden to prove by clear and convincing evidence that no bond or other condition would mitigate Petitioner's risk of flight, the Government did not meet its burden, and the Immigration Judge did not address the reasons for finding that Petitioner's risk of flight could not be mitigated. (Obj. at 3–8, ECF No. 18.) On August 31, 2026, Magistrate Judge Christensen issued the Supplemental Report, which addresses Petitioner's objections but maintains the recommendation to deny the Petition. (Supp. R. & R.) On September 3, 2026, Petitioner submitted objections to the Supplemental Report. (Supp. Obj., ECF No. 20.)

First, Petitioner objects that the Supplemental Report applied the incorrect standard because it relies on *Martinez v. Clark*, 124 F.4th 775 (9th Cir. 2024) to determine whether procedural due process required that the Immigration Judge considered alternatives to detention. (Supp. Obj. at 3.) Petitioner claims that the Supplemental Report's reliance on *Martinez* is inapplicable because it concerned a different factual context, where the immigration judge found that the petitioner was a danger to the community. (*Id.*) In this case, however, Petitioner claims that "[d]angerousness was litigated and rejected," and Petitioner's bond was denied

because the Immigration Judge found that Petitioner was a "substantial flight risk." (*Id.* at 4.) According to Petitioner, the Government failed to justify that continued detention was warranted because Petitioner was a flight risk, such that no bond or condition was sufficient to escape detention. (*Id.*) Petitioner argues that the immigration judge thus lacked clear and convincing evidence to determine that no bond or condition of release would suffice instead of detention. (*Id.* at 5.)

As an initial matter, the Court finds that the Supplemental Report properly relied on the framework described in *Martinez*, 124 F.4th at 786. The Ninth Circuit has explained that "due process requires immigration courts to make contemporaneous records of bond hearings, and the government to prove dangerousness or risk of flight by clear and convincing evidence," but it does not mandate that immigration courts "consider release conditions or conditional parole" before making these decisions. *See id.* (internal citations omitted) (discussing *Singh v. Holder*, 638 F.3d 1196, 1200, 1205 (9th Cir. 2011)). If a plaintiff is determined to be neither dangerous nor a flight risk, conditions of release should be considered to ensure that detention is "reasonably related" to the government's interest in protecting the public and ensuring appearances at immigration proceedings. *Martinez*, 124 F.4th at 786 (citing *Hernandez v. Sessions*, 872 F.3d 976, 984–85, 990–91 (9th Cir. 2017)). Applying this framework to the facts at issue, *Martinez* concluded that, because the petitioner was "found to be a danger to the community," his detention is clearly "reasonably related" to the government's interest in protecting the public. *Id.*

Here, the Immigration Judge determined Petitioner was a "substantial flight risk." (Supp. R. & R. at 5.) Therefore, Petitioner's detention is similarly "reasonably related" to the government's interest in ensuring his appearance in immigration proceedings. *See Martinez*, 124 F.4th at 786. Accordingly, the Immigration Judge was not required to consider release conditions.

Petitioner's references to *Matter of Drysdale*, 20 I. & N. Dec. 815 (BIA 1994), do not change that conclusion. (*See* Supp. Obj. at 4.) In *Drysdale*, the Board of Immigration Appeals explained that the standard for determining whether a petitioner is "likely to appear for any scheduled hearing" is flexible, because "[t]he likelihood, or probability, of appearance could vary from none to great." *Id.* at 818. By characterizing Petitioner as a flight risk, however, the Immigration Judge determined that the likelihood Petitioner would appear at a scheduled hearing was low. (Bond Hearing Tr. at 4–5, ECF No. 1-3.) Because the Immigration Judge determined Petitioner was a flight risk, the Supplemental Report properly analyzed the decision to deny bond pursuant to *Martinez*.

Petitioner also claims that the Government did not meet its burden to prove by clear and convincing evidence that Petitioner's continued detention was warranted because he posed a substantial flight risk. (Supp. Obj. at 4.) The "clear and convincing" standard requires that the Government present evidence to establish "'an abiding conviction that the truth of [the] factual contentions at issue' is 'highly probable.'" *Mondaca-Vega v. Lynch*, 808 F.3d 413, 422 (9th Cir. 2015) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1982)). The Board of Immigration Appeals has identified nine factors that immigration judges may weigh in determining whether an individual is a danger to the community or a flight risk:

> (1) whether the individual has a fixed address in the United States; (2) the individual's length of residence in the United States; (3) the individual's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the individual's employment history; (5) the individual's record of appearance in court; (6) the individual's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the individual's history of immigration violations; (8) any attempts by the individual to flee prosecution or

> otherwise escape from authorities; and (9) the individual's manner of entry to the United States.

*Martinez*, 124 F.4th at 783 (quoting *In re Guerra*, 24 I. & N. 37, 40 (BIA 2006)). In bond hearings, "[a]ny evidence in the record that is probative and specific can be considered." *Barrientos v. ICE Field Off. Dir.*, 667 Fed. App'x 184 (9th Cir. 2016) (citing *Guerra*, 24 I. & N. at 40).

In this case, the Government argued that Petitioner should be kept in detention as both a danger and a flight risk, claiming that Petitioner had overstayed his visa in 2020, he spent limited time here in the country, and he lacks ties to the United States. (Bond Hearing Tr. at 3.) The Government acknowledged that Petitioner had identified a potential sponsor with whom Petitioner could stay, but it asserted it had concerns with the sponsor's multiple addresses. (*Id.*) These factors each correspond to the *Guerra* standard. The Immigration Judge did not abuse his discretion in applying these facts to the *Guerra* standard to find that Petitioner is a flight risk. (*See* Supp. R. & R. at 9; Bond Hearing Tr. at 4–5.)

Second, Petitioner objects that the Supplemental Report relies on a finding that the Immigration Judge never made. (Supp. Obj at 6.) Petitioner asserts the Supplemental Report's conclusion that the Immigration Judge "reasonably believed" Mr. Bae's sparse ties to the United States, his overstay, the Interpol Red Notice, and the sponsor's addresses amounted to "clear and convincing evidence" that Petitioner posed a "flight risk that no amount of bonds or alternatives to detention could cure," was neither argued by the Government nor stated as reasons by the Immigration Judge. (*Id.* at 6–7; *see also* Supp. R. & R. at 12.) Contrary to Petitioner's arguments, use of the words "mitigate," "bond amounts," or "alternatives to detention" were not necessary for the Immigration Judge to make this finding. (*See* Supp. Obj. at 6–7); *cf. Guerra*, 24 I. & N. at 40; *Martinez*, 124 F.4th at 786. As explained above, because the Immigration Judge determined that Petitioner was a flight risk, it was not necessary to address alternatives to detention. Petitioner also argues that the facts

upon which the Immigration Judge relied "bear[] on whether risk exists, not on whether it could be managed." (Supp. Obj. at 6–7.) Such arguments, however, go toward the Immigration Judge's discretionary determinations. (Supp. R. & R. at 17); *see also Guerra*, 24 I. & N. Dec. at 40 ("The Immigration Judge may choose to give greater weight to one factor over others, as long as the decision is reasonable").

Petitioner also claims that the Supplemental Report treats the Red Notice as a "principal pillar of a finding made by clear and convincing evidence," even though "the party carrying that burden neither offered nor argued it." (Supp. Obj. at 7.) Because the Government never identified the Red Notice in the bond hearing, Petitioner argues that the Government did not satisfy its burden by clear and convincing evidence. (*See id.*) An immigration judge may, however, consider "[a]ny evidence in the record that is probative and specific." *Guerra*, 24 I. & N. at 40–41. Here, contrary to Petitioner's claims, the Government properly submitted Petitioner's Form I-213 as part of the Administrative Record. (*See* R., ECF No. 1-2.) The Form I-213 states that, on July 30, 2024, a South Korean court issued an arrest warrant for Petitioner's purported "violation of the Drug Narcotics Control Act," and on August 29, 2024, an Interpol Red Notice was subsequently issued requesting Petitioner's arrest. (*Id.* at 17.) Absent a challenge from Petitioner, the Immigration Judge could properly find that this information was probative and specific as to Petitioner's likelihood to flee prosecution. *See, e.g., Torres Murrillo v. Barr*, No. 19-cv-05676-SK, 2019 WL 8723753, at *5 (N.D. Cal. Oct. 23, 2019) (considering a Red Notice as evidence that the petitioner may be unlikely to comply with a deportation order because the petitioner faced up to twenty years of imprisonment in the country to which he would be deported). Accordingly, the Court agrees with the Supplemental Report's determination that the Immigration Judge did not abuse his discretion in finding the Government had met its burden.

Third, Petitioner argues that the Supplemental Report does not address Petitioner's argument that the Immigration Judge could not have reasonably

considered the Red Notice purportedly issued against Petitioner, because none of the documents verifying the Interpol Red Notice are in the record. (Supp. Obj. at 8.) Petitioner argues that, in *Gonzalez-Castillo v. Garland*, 47 F.4th 971 (9th Cir. 2022), the Ninth Circuit explained that a Red Notice is not independently vetted for factual and legal justification and, therefore, its reliability corresponds to the underlying foreign arrest warrant. (Supp. Obj. at 8.) Petitioner argues that, because the Government did not produce either the Red Notice or underlying warrant, the Immigration Judge's reliance on an enforcement officer's summary in the Form I-213 to deny release is insufficient to deny release based on flight risk. (*Id.* at 9.) The Court disagrees. As an initial matter, Petitioner did not expressly challenge the admissibility of the Form I-213 that described the Red Notice. (Bond Hearing Tr. at 2.) While Petitioner argued that the immigration judge should place "zero" weight on the exhibits, the "factual and legal" basis of the Red Notice itself remained uncontested. (*Id.*); *cf. Gonzalez-Castillo*, 47 F.4th at 976 (petitioner claimed the Red Notice was fabricated). Further, the Supplemental Report explains that an Immigration Judge may rely on a Form I-213's discussion of the Interpol Red Notice as one piece of evidence contributing to the Judge's decision. (Supp. R. & R. at 13.) As the Ninth Circuit has explained, "the United States treats a foreign-issued Red Notice only as a formalized request by the issuing law enforcement authority to 'be on the look-out' for the fugitive in question, and to advise if they are located." *Gonzalez-Castillo*, 47 F.4th at 975 (quoting About INTERPOL Washington: Frequently Asked Questions, U.S. Dep't of Justice, https://www.justice.gov/interpol-washington/frequently-asked-questions (as of August 22, 2022)). Nevertheless, it clarified, a Red Notice may "constitute documentary evidence," such that an immigration judge is entitled to give it at least some weight. *Gonzalez-Castillo*, 47 F.4th at 979; *see also Villabos Sura v. Garland*, 8 F.4th 1161, 1168 (9th Cir. 2021) (finding documents, including a Red Notice, as well as petitioner's testimony, collectively amounted to substantial evidence supporting a finding of probable

cause). Moreover, to the extent that Petitioner objects to the Immigration Judge's consideration of the I-213 on evidentiary grounds, as the Supplemental Report explains, the Federal Rules of Evidence do not govern immigration proceedings. (Supp. R. & R. at 16 (discussing *Singh v. Holder*, 638 F.3d 1196, 1209–10 (9th Cir. 2011).)

In this case, the Immigration Judge did not rely on the Form I-213 discussing the Red Notice alone to determine that the Government had met its burden to show by clear and convincing evidence that Petitioner is a flight risk. Instead, the Immigration Judge also considered other evidence in the record, including Petitioner's limited ties to the country, his previous violation of immigration law, and his sponsor's multiple addresses and thus lack of a stable residence. (Supp. R. & R. at 13–14.) These other factors were identified by the Government during the hearing. (Bond Hearing Tr. at 3.) Accordingly, the Immigration Judge's consideration of Petitioner's Form I-213 discussing the Red Notice, in addition to the other evidence, was proper. *See Torres Murillo v. Barr*, 2019 WL 8723753, at *5 ("It does not violate due process to give a [R]ed [N]otice some weight in determining flight risk").

Petitioner also claims that *Gonzalez-Castillo* is pertinent because, in that case, "the Ninth Circuit rejected the government's contention that producing a Red Notice shifted the burden of proof" to the petitioner. (Supp. Obj. at 9.) In *Gonzalez-Castillo*, the government argued that all it needed was "some evidence" that the serious nonpolitical crime bar might apply, at which point it was petitioner's burden to prove that such grounds did not apply. *Id.* at 979. The Ninth Circuit, however, rejected the government's argument regarding burden shifting based on the evidentiary requirements of 8 U.S.C. §§ 1158(b)(2)(A)(iii) and 1231(b)(3)(B)(iii), which require there be "serious reasons" for believing that a petitioner committed a "serious nonpolitical crime" that made him ineligible for withholding of removal. *See Gonzalez-Castillo*, 47 F.4th at 979. The Ninth Circuit equated the requisite statutory finding of "serious reasons" as being equivalent to having probable cause." *Id.* at

977–78. It then explained that, to shift the burden to the petitioner to prove that the nonpolitical crime bar does not apply, the government typically cannot simply rely on "some evidence" in the form of a Red Notice alone but, instead, must present evidence that is sufficient to establish a probable cause finding. *Id.* at 979–80.

As stated previously, in this case, the Immigration Judge did not solely rely on the information in the Form I-213 regarding the Red Notice to determine the government had met its burden. Instead, the Immigration Judge considered other evidence in the record the Government identified during the hearing. Further, although Petitioner claims with regard to the Red Notice that the Immigration Judge "treat[ed] a document he has never seen as established fact," (Supp. Obj. at 9), the Immigration Judge properly considered Petitioner's Form I-213, which states that, on July 30, 2024, a South Korean court issued an arrest warrant for Petitioner's purported "violation of the Drug Narcotics Control Act," and on August 29, 2024, an Interpol Red Notice was subsequently issued requesting Petitioner's arrest. (*See* R. at 17.) Absent any evidence challenging the Red Notice submitted by Petitioner, the Immigration Judge properly considered the information regarding the Red Notice and other evidence submitted by the Government. Accordingly, the Court rejects Petitioner's objection on this ground.

Fourth, Petitioner objects to the Supplemental Report's finding that "Petitioner points to no misstatements" that indicate any red flags. (Supp. Obj. at 9; *see also* Supp. R. & R. at 15–16.) Petitioner acknowledges that the Form I-213 was admissible but argues that the description of the Red Notice contained therein is insufficient to "establish by clear and convincing evidence that no bond or condition of release could secure [Petitioner's] appearance." (Supp. Obj. at 10.) Petitioner also claims these objections were preserved because Petitioner argued during the hearing that the Immigration Judge should place "zero weight" on the Government's exhibits as there was "no conviction of anything" shown on the exhibits. (Supp. Obj. at 10 (citing Bond Hearing Tr. at 2).)

The Court overrules Petitioner's objection. In the absence of evidence to the contrary, "information on an authenticated immigration form is presumed reliable." *See Hernandez v. Garland*, 52 F.4th 757, 766 (9th Cir. 2022) (quoting *Espinoza v. I.N.S.*, 45 F.3d 308, 310 (9th Cir. 1995)). The Ninth Circuit has held that a Form I-213 provides a "presumptively reliable" basis to assess the seriousness of a petitioner's crime. *Hernandez*, 52 F.4th at 766. The Immigration Judge in this case was therefore entitled to consider the Form I-213's description of the Red Notice as documentary evidence contributing to the overall assessment that Petitioner was a substantial flight risk. As to Petitioner's objection raised during the hearing, even if the Form I-213 did not record any convictions, the Immigration Judge was still entitled to consider it as probative of any *Guerra* factors used to determine if an individual is a flight risk. *See Guerra*, 24 I. & N. at 40–41.

Petitioner also points to what he characterizes as "misstatements and omissions in the record" as support for "red flags" raised by the Immigration Judge's ruling. (Supp. Obj. at 11.) Petitioner contends that the Immigration Judge was required to "mention counsel's request" for alternatives to detention or explain why alternatives to detention would be ineffective. (*Id.*) As explained above, because the Immigration Judge determined that Petitioner was a flight risk, he was not required to address alternatives to detention. Petitioner also claims that the Immigration Judge "recited the Interpol Red Notice as established fact," without seeing it. (*Id.*) As explained above, however, the Immigration Judge was entitled to place at least some weight on Petitioner's Form I-213. Petitioner argues that the Immigration Judge incorrectly characterized the Court's Order requiring a bond hearing as a "temporary restraining order," (*id.*), but Petitioner has not made clear to this Court why this characterization suggests that the Immigration Judge was not a neutral adjudicator or why this characterization otherwise allegedly violated Petitioner's due process rights. Similarly, Petitioner has failed to show the Immigration Judge lacked neutrality based on the Judge not pointing out that Petitioner's arrests were dismissed without

conviction. (Supp. Obj. at 11.) The Immigraton Judge was not required to comment on every fact or piece of evidence in the record or the absence thereof to demonstrate neutrality.

Finally, Petitioner argues that the facts of this case are distinguishable from *Yoryet Maria Lozano Mosquera v. Warden*, No. 5:26-cv-01724-SSS-BFM, ECF. No. 16 at 8 (C.D. Cal. Apr. 30, 2026). (Supp. Obj. at 11.) Petitioner argues that the Immigration Judge's remarks in this case "accompany a ruling that omits the analysis the hearing is ordered to supply," supports a finding that the Immigration Judge was not a neutral adjudicator and violated Petitioner's due process rights. (*Id*. at 12.) The Court disagrees. An immigration judge may render a decision orally, pursuant to 8 C.F.R. § 1003.37, provided the decision is "stated by the immigration judge in the presence of the parties" and a "memorandum summarizing the oral decision" is served on the parties. Here, while the Immigration Judge's oral decision was brief, the two requirements appear to have been fulfilled. (*See* Bond Hearing Tr. (transcript stating decision); R. at 1 (memorandum summarizing decision).) Further, while the Immigration Judge's comments "evidence disagreement" with the Court's Order requiring the bond hearing, the Court agrees with the Supplemental Report's finding that these comments did not exhibit bias or prejudice affecting the outcome of Petitioner's proceeding. (Supp. R. & R. at 17.) The Court thus overrules Petitioner's objections.

//

//

//

//

//

//

//

//

**ORDER**

For the foregoing reasons, it is ordered that (1) the Report and Recommendation is accepted and adopted: (2) Respondent's motion to dismiss the Petition is granted; and (3) this action is dismissed without prejudice.

DATED: November 23, 2026

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE